1

2          **IN THE UNITED STATES DISTRICT COURT FOR THE**

3                    **EASTERN DISTRICT OF CALIFORNIA**

4

5

| | |
|---|---|
| **MARIA FLORA URBANO,** ) | **1:12-CV-00464 AWI SMS** |
| **an individual** ) | |
|            **Plaintiff,** ) | **ORDER ON MOTION TO** |
| ) | **DISMISS PLAINTIFF'S FIRST** |
|   **v.** ) | **AMENDED COMPLAINT** |
| ) | |
| **BANK OF AMERICA, N.A., successor in** ) | (Doc. No. 11) |
| **interest to COUNTRYWIDE BANK, a** ) | |
| **N.A.; RECONTRUST COMPANY, N.A.,** ) | |
| **a wholly-owned subsidiary of BANK OF** ) | |
| **AMERICA, N.A.; and all persons or** ) | |
| **entities unknown claiming any legal or** ) | |
| **equitable right, title, estate, lien or** ) | |
| **interest in the property described in this** ) | |
| **complaint adverse to Plaintiff's title** ) | |
| **thereto, and DOES 1 through 25,** ) | |
| **inclusive,** ) | |
|            **Defendants.** ) | |

## INTRODUCTION

This case arises out of a mortgage loan transaction.  Plaintiff Maria Flora Urbano ("Plaintiff") brings suit against Defendants Bank of America, N.A., as successor by merger to Countrywide Bank FSB, erroneously sued as Bank of America, N.A., successor in interest to Countrywide Bank, N.A. ("BANA"); and ReconTrust Company, N.A., a wholly owned subsidiary of Bank of America, N.A. ("ReconTrust") (collectively, "Defendants").  On April 16, 2012, Plaintiff filed a First Amended Complaint alleging causes of action for: 1) fraud in origination of loan; 2) set aside pending trustee sale based upon wrongful foreclosure in violation of Cal. Civ. Code § 2923.5; 3) violation of California Civil Code § 2923.6;  4) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq.; 5) breach of contract; 6) breach of implied covenant of good faith and fair dealing; 7) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.; 8) rescission; 9) predatory lending in violation

of California Business & Professions Code §17200; 10) unfair and deceptive business act practices; 11) negligence; 12) declaratory relief; and 13) quiet title.  See First Amended Complaint ("FAC"), Court's Docket, Doc. No.  8.  Defendants have filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Court's Docket, Doc. No. 11. Plaintiff filed a written opposition to the motion.  See id., Doc. No. 12.  Defendants filed a reply. See id., Doc. No. 13.  For the reasons stated herein, Defendants' motion shall be granted with leave to amend.

## ALLEGED FACTS AND PROCEDURAL BACKGROUND[1]

Plaintiff obtained a Option Adjustable Rate Mortgage loan from Countrywide Bank[2] in the amount of $693,500 to finance the purchase of residential property located at 2202 East Hogan Way, Fresno, CA, 93720.  See FAC ¶ 17.  The loan was secured by a Deed of Trust ("DOT") which was recorded on August 12, 2005.  See FAC, Ex A; RJN, Ex. A.  The DOT provides that upon breach of the loan agreement, the lender can give notice to accelerate.  Id. Plaintiff contends she was never given an opportunity to review the loan application, and she was not given an opportunity to read the loan documents prior to the closing date.  FAC ¶ 22.  At closing, Plaintiff alleges she spent only thirty minutes at the escrow office and felt pressured into signing the loan documents based only on the loan agent's representations.  Id. ¶ 23.  It was not

---

[1]  The facts stated herein are taken from the Complaint and Defendants' Request for Judicial Notice ("RJN").  The subjects of the RJN include: a Deed of Trust recorded on August 12, 2005; a Notice of Default and Election to Sell Under Deed of Trust recorded on January 20, 2011; a Notice of Trustee's Sale recorded on August 2, 2011; a U.S. Bankruptcy Court for the Eastern District of California docket for Bankruptcy Petition #11-62125; a U.S. Bankruptcy Court for the Eastern District of California Notice of Entry of Order of Dismissal Without Discharge for Bankruptcy Petition #11-62125; Second Amended Complaint in Case No. 30-2011-00450819-CU-MT-CXC, filed in the Orange County Superior Court on June 9, 2011; Orange County Superior Court's Order on Second Amended Complaint in Case No. 30-2011-00450819-CU-MT-CXC, entered January 27, 2012; and Orange County Superior Court's docket for Case No. 30-2011-00450819-CU-MT-CXC.  Plaintiff filed no objections to the request for judicial notice.  Public documents are the proper subject of judicial notice.  See Fed. R. Evid. 201(b); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir.1986); Fortaleza v. PNC Fin. Serv. Grp., Inc., 642 F.Supp.2d 1012, 1019 (N.D.Cal.2009). The Court therefore grants Defendants' request.

[2]  On April 27, 2009, BANA and Countrywide Bank FSB were merged and now operate as a single legal entity.  See Court's Docket, Doc. No. 11, n.2.

until Plaintiff attempted to modify her loan that she discovered the loan application had falsely stated her monthly income was $10,675, even though she had told the loan agent it was $9,000. Id. ¶ 22, Ex. B.

In or about February 2008, Plaintiff became ill and was placed on restricted duty at work for the next two and a half years.  FAC ¶ 26.  Plaintiff struggled to make her loan payments during this time, and requested assistance from BANA for a loan modification.  Id. ¶ 27. Although BANA officials told her they were unable to offer her any loan workout options, Plaintiff applied for a loan modification through the Homes Affordable Modification Program ("HAMP").  Id. ¶ 28.  That loan modification application was denied because Plaintiff made too much money.  Id. ¶ 28.  In or about early 2009, Plaintiff applied for an in-house loan modification, which was also denied because she made too much money.  Id. ¶ 29.  Later in 2009, Plaintiff sought the assistance of a third-party company to obtain a loan modification.  Id. ¶ 30.  The third-party company contacted BANA, and Plaintiff was offered a three month trial modification.  Id.  After making the payments under the trial modification for six months, Plaintiff was informed that the trial period had ended and her payments would return to their original amount.  Id.  Plaintiff then sought the assistance of a non-profit organization, but after five to seven months of resubmitting documents and negotiation, Plaintiff was again denied a loan modification.  Id.  ¶ 31.

On January 20, 2011, ReconTrust recorded and sent a Notice of Default to Plaintiff informing her that she was $53,584.97 in default.  Id. ¶ 32; RJN, Ex. B.  On August 2, 2011, ReconTrust recorded a Notice of Trustee Sale under the DOT.  FAC ¶ 33; RJN, Ex. C.  The sale date was postponed from August 24, 2011, until November 7, 2011.  FAC ¶ 36.  In or about November 2011, Plaintiff hired another third-party company to assist her in obtaining a loan modification through HAMP.  Id.  ¶ 34.  The November 7, 2011 sale date was cancelled, but BANA is still in the process of foreclosing.  Id. ¶ 36.

Plaintiff first pursued claims against Defendants in a mass tort action brought by 1,329 co-plaintiffs in the Superior Court for Orange County (the "Orange County Action").  See FAC ¶

3

37; RJN, Ex. F.  The claims in that case appear to relate to the same mortgage transaction at issue here.  On June 9, 2011, the plaintiffs in the Orange County Action filed a Second Amended Complaint alleging (1)  fraudulent concealment; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) injunctive relief for wrongful intentional misrepresentation; (5) injunctive relief for wrongful foreclosure under Cal. Civ. Code § 2923.5; (6) injunctive relief; and (7) unfair competition in violation of Cal. Bus. & Prof. Code § 17200 et seq.  See RJN, Ex. F.  The Superior Court sustained Defendants' demurrer to the SAC, and granted the plaintiffs leave to amend within 60 days.  FAC ¶ 37.  On March 26, 2012, Defendants' attorney sent a letter to Plaintiff informing her that Defendants intended to apply for an ex parte order granting relief from the court's order temporarily staying the action for the purposes of filing a motion to dismiss.  See FAC, Ex. C.  The letter stated that the motion to dismiss would be based on the plaintiffs' failure to amend their complaint within the time required.  Id.

Plaintiff filed the instant action in the Superior Court for Fresno County on or about March 2, 2012, alleging ten causes of action, including a claim under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.  Defendants removed the action to this Court on March 27, 2012, on the basis of federal question jurisdiction.  Defendants filed a motion to dismiss the original complaint on March 29, 2012.  On April 16, 2012, the day her opposition to the motion was due, Plaintiff filed the FAC.  Defendants withdrew their first motion to dismiss, and filed the instant motion directed at the FAC.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted.  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); see Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. Daniels–Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir.2010). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

**DISCUSSION**

**A.      Claim Splitting**

As a preliminary matter, Defendants argue Plaintiff has engaged in impermissible claim splitting because the claims in the FAC could have been pled in the pending Orange County Action.  Plaintiff contends the FAC is proper because the Orange County Action is "currently nearing dismissal" for failure to amend the Second Amended Complaint within the time required by the court.

The claim splitting doctrine is derived from principles of res judicata, or claim preclusion. See Adams v. California Dept. of Health Servs., 487 F.3d 684, 689 (9th Cir. 2007).  "The doctrine of claim splitting bars a party from subsequent litigation where the 'same controversy' exists."  Single Chip Systems Corp. v. Intermec IP Corp., 495 F. Supp. 1052, 1058 (S.D. Cal. 2007) (quoting Nakash v. Superior Court, 196 Cal. App. 3d 59, 68, 241 Cal. Rptr. 578 (Cal. App. 1987)).  However, "the doctrine of claim splitting, unlike res judicata, does not require a final

judgment on the merits." Single Chip Systems, 495 F. Supp. 1052, 1059 (S.D. Cal. 2007) (citing Adams, 487 F.3d at 684). "What is required in the context of a claim-splitting analysis is to assume that the first suit was final, and then determine if the second suit could be precluded." Id. (emphasis in original). "A main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'" Clements v. Airport Authority of Washoe County, 69 F.3d 321, 328 (9th Cir.1995) (citing Restatement (Second) Judgments, § 26, cmt. A).

To determine whether a suit is duplicative, and therefore barred by the claim splitting doctrine, the Ninth Circuit applies the four-part transaction test for claim preclusion:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Adams, 487 F.3d at 684 (citing Cosantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). Defendants argue the four-part test is met here because both the Orange County Action and the instant matter seek similar relief, assert some of the same causes of action, and allege Defendants committed wrongdoing at the origination of the same mortgage loan.

However, the claim splitting doctrine "does not forbid a plaintiff from proceeding on the same cause of action in two different courts of concurrent jurisdiction at the same time, if jurisdiction is in personam." Walton v. UTV of San Francisco, Inc., 776 F.Supp. 1399, 1400 (N.D. Cal. 1991) (citing Kline v. Burke Construction Co., 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922); Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1963); Princess Lida v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); Fowler v. Ross, 142 Cal.App.3d 472, 191 Cal.Rptr. 183 (Cal. App. 1983)). As the Ninth Circuit noted in Adams, the claim splitting doctrine embraces the general rule that plaintiffs "have no right to maintain two separate actions involving the same subject matter at the same time, in the same

court and against the same defendants." Adams, 487 F.3d at 688 (emphasis added).   Indeed, the

majority of the claim splitting cases cited by Defendants involve two successive suits filed in the

same court.  In Single Chip Systems, for example, the Southern District of California dismissed a

defendant's 2007 action under the claim splitting doctrine where the court had denied the

defendant leave to file an amended counterclaim in a 2004 action in the same court.  See 495

F.Supp.2d at 1058-65.  Similarly, the Northern District of California found that the claim

splitting doctrine barred a plaintiff from asserting infringement of the same patent in a second

action where the court had denied the plaintiff's motion for leave to amend the infringement

claim in the first action.  See Biogenex Laboratories, Inc. v. Ventana Medical Systems, Inc., No.

C-05-860-JF, 2005 WL 1869342, *2-4 (N.D. Cal., Aug. 5, 2005).

Defendants cite no case law suggesting that the claim splitting doctrine bars a later action

removed to federal court that involves the same subject matter as a pending state court action.

Although a foreclosure proceeding is itself a quasi in rem action, jurisdiction in the instant action

challenging the foreclosure proceeding is in personam.  The Court therefore finds that the claim

splitting doctrine does not bar Plaintiff's FAC.[3]

**B.    Rule 8**

Defendants next argue that, on its face, the FAC fails to meet the pleading requirements

---

[3] Defendants also argue in the alternative that the FAC must be abated under California's statutory plea in abatement rule.  "The pendency of another earlier action growing out of the same transaction and between the same parties is a ground for abatement of the second action." Cal. Civ. Code § 430.10(c).  Similarly, Defendants argue that the FAC interferes with the Orange County Superior Court's exclusive concurrent jurisdiction.  See Court's Docket, Doc. No. 11 at 5.  Exclusive concurrent jurisdiction is a California rule of policy that applies only "when two California superior courts have concurrent jurisdiction over the subject matter and all parties," and the remedy is a stay of the second action, not dismissal.  See People ex rel. Garamendi v. American Autoplan, Inc., 20 Cal. App. 4th 760, 769-71 (Cal. App. 1993) (emphasis added). Although abatement and exclusive concurrent jurisdiction may have applied when this action was still pending in state court, Defendants opted for removal.  They cannot now invoke these rules to bar the instant action.  Cf. Walthan v. Pazin, No. CV F 07-0874 AWI DLB, 2007 WL 4181716, *10 (E.D. Cal. Nov. 21, 2007) ("[T]he fact that [the action] was originally filed in state court lends weight to the argument that the removal was imprudent and the case should be returned to the state court rather than dismissed as duplicative.")

set forth in Rule 8 of the Federal Rules of Civil Procedure.  Under Rule 8(a), a complaint must

contain enough factual allegations to "raise a right to relief above the speculative level."

Twombly, 550 U.S. at 558.  This standard requires that the defendant be provided with fair or

meaningful notice of the specific conduct alleged.  Id.  Defendants contend Plaintiff fails to

allege any facts relating to the basic elements of her asserted claims.  Moreover, Defendants

argue that Plaintiff cites various statutes but fails to articulate comprehensible legal theories

pursuant to those laws.  The Court disagrees.  Plaintiff alleges with specificity Defendants'

conduct giving rise to her foreclosure-related claims, including identifying the relevant dates and

documentary evidence underlying those claims.  This is sufficient for purposes of Rule 8(a).

## C.    Statutes of Limitations and Equitable Tolling

Defendants contend relevant statutes of limitations bar seven of Plaintiff's claims.

Plaintiff argues the doctrine of equitable tolling should apply to each of the claims because

Defendants' fraud concealed the cause of action against them.  See Regents of Univ. of Calif. v.

Superior Court, 20 Cal. 4th 509, 533 (Cal. 1990).  The doctrine of equitable tolling provides that

"where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or

want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is

discovered. . . ."  Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946). "This equitable doctrine is

read into every federal statute of limitation."  Id.   In determining justifiable application of the

equitable tolling doctrine, the court "focuses on excusable delay by the plaintiff."  Johnson v.

Henderson, 314 F.3d 409, 414 (9th Cir. 2002).  Excusable delay by the plaintiff is defined as

whether a reasonable plaintiff would not have known of the existence for a possible claim within

the limitations period.  Lukovsky v. City & County of San Francisco, 535 F.3d 1044, 1051 (9th

Cir.2008).   To establish excusable delay, the plaintiff must show "fraudulent conduct by the

defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the

operative facts that are the basis of its cause of action within the limitations period, and due

diligence by the plaintiff until discovery of those facts."  Federal Election Com'n v. Williams,

104 F.3d 237, 240-41 (9th Cir. 1996).

When equitable tolling is at issue, its applicability generally "depends on matters outside the pleadings, so it is rarely appropriate to grant a 12(b)(6) motion to dismiss." <u>Huynh v. Chase Manhattan Bank</u>, 465 F.3d 992, 1003-04 (9th Cir. 2006).   Nevertheless, when a plaintiff has not alleged any facts demonstrating that she could not have discovered the alleged violations by exercising due diligence, dismissal may be appropriate. See <u>Meyer v. Ameriquest Mortg. Co.</u>, 342 F.3d 899, 902-03 (9th Cir. 2003) (TILA claim and equitable tolling of the claim dismissed because plaintiff was in full possession of all loan documents and did not allege any concealment of loan documents or other action that would have prevented discovery of the alleged TILA violations); <u>Hubbard v. Fidelity Federal Bank</u>, 91 F.3d 75, 79 (9th Cir.1996) (all TILA claims prior to August 22, 1990 were dismissed because no evidence suggested that defendant banks attempted to conceal alleged breach of contract prior to August 22, 1991).

Plaintiff alleges she did not discover the fraudulent facts used by Defendants to qualify her for the loan until she reviewed the original loan documents in preparation for an application for a loan modification.  FAC ¶ 204.  Plaintiff alleges it was only then that she discovered why the monthly payment had become unaffordable, why the principal of the loan had substantially increased, and why she was locked in with a harsh prepayment penalty under the terms of the agreement.  <u>Id.</u>  This explanation is not an excusable delay sufficient to invoke this Court's application of equitable tolling.  Plaintiff was in full possession of the loan documents.  <u>Id.</u> 164. The DOT, which Plaintiff signed, indicated that the principal could increase.  <u>See</u> RJN, Ex. A. The DOT included an Adjustable Rate Rider that explained the initial interest rate and subsequent monthly payment changes, and a Prepayment Penalty Addendum, which explained the prepayment terms.  <u>Id.</u>  Moreover, the first page of the Adjustable Rate Rider stated in bold lettering:

**THE NOTE CONTAINS PROVISIONS THAT <u>WILL</u> CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO**

9

**REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

Id. (emphasis added).  The Adjustable Rate Rider also set forth the interest rate change date of October 1, 2005, shortly after closing.  Id.  Plaintiff executed the Adjustable Rate Rider, acknowledging that "borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider."  Id.  Plaintiff argues she was unaware that the payment amount could change, and she was not provided with a schedule before she was induced to enter into the loan indicating how the monthly payment could change and when it would change.  FAC ¶ 61.  She further contends Defendants concealed the fact that the 1% interest rate would increase after 56 days to a much higher rate.  Id. ¶ 57.  However, in addition to signing the Adjustable Rate Rider, Plaintiff acknowledges she received the Truth in Lending Disclosure Statement, dated August 5, 2005, which explained that the annual percentage rate would be 6.072% and included a payment schedule showing the monthly payments increasing over time from $2,033.73 to $4,419.44.  See FAC, Ex. A.  Thus, Plaintiff cannot contend Defendants concealed these facts from her.

Plaintiff alleges she signed the loan documents in only thirty minutes, and was not given an opportunity to read the loan documents prior to the signing date.  FAC ¶ 23.  However, Plaintiff does not allege that she was unable to read the loan documents at the closing.  Rather, she alleges she "felt pressured into signing the Loan Documents and closing the loan" and that she "signed the Loan Documents unaware of what she was signing."  Id.  Under California law, "a party who signs a contract 'cannot complain of unfamiliarity with the language of the instrument.'"  Pac. State Bank v. Greene, 110 Cal. App. 4th 375, 393 (Cal. App. 2003) (quoting Madden v. Kaiser Foundation Hospitals, 17 Cal.3d 699, 710, 131 Cal. Rptr. 882, 552 P.2d 1178 (Cal. 1976)).  Therefore, the Court finds there is no basis for equitable tolling.

### 1.    Fraud (First Cause of Action)

The applicable statute of limitations for Plaintiff's claim for fraud in origination of the loan is three years.  See Cal. Code Civ. P. § 338(d).  This action was filed in Fresno County

Superior Court on March 2, 2012.  Thus, if the fraud claim accrued prior to March 2, 2009, it is time-barred.  A cause of action for fraud does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  See id.  However, California courts "have read into the statute a duty to exercise diligence to discover the facts."  Parsons v. Tickner, 31 Cal. App. 4th 1513, 1525 (Cal. App. 1995).  To apply the discovery rule to her claims, Plaintiff must plead facts showing: "(1) lack of knowledge; (2) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); (3) how and when [s]he did actually discover the fraud or mistake."  See Briosos v. Wells Fargo Bank, C 10-02834 LB, 2010 WL 5387826, at *8 (N.D. Cal. Dec. 21, 2010) (citing Parsons, 31 Cal. App. 4th at 1525).  "[W]hen the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to her investigation (such as public records or corporation books), the statute commences to run."  Parsons, 31 Cal.App.4th at 1525.  Plaintiff claims she did not discover Defendants' suppression of facts and intentional acts of deception until she reviewed her loan documents when she was denied a loan modification and subsequently sought legal action against Defendants, in or about November 2011.  FAC ¶ 70.  As discussed above, Plaintiff's failure to review the loan documents that she signed does not support the application of the discovery rule.  Plaintiff also acknowledges that the loan documents were provided to her after the loan transaction was entered into, signed, recorded, and complete.  FAC ¶ 165.  Accordingly, Plaintiff's First Cause of Action for fraud in the origination of the loan is subject to dismissal because it is time-barred and Plaintiff has failed to provide a basis for application of the delayed discovery rule.

### 2.     RESPA (Fourth Cause of Action)

RESPA claims brought under 12 U.S.C. § 2605 are subject to a three year statute of limitations period, and RESPA claims brought under 12 U.S.C. § 2607 and § 2608 are subject to a one year statute of limitations, both of which begin to run from the date of the occurrence of the violation.  See 12 U.S.C. § 2614.  Defendants claim the statute of limitations started to run at the

closing of the loan transaction. <u>See</u> Court's Docket, Doc. No. 11 at 10. However, Plaintiff's RESPA claims do not appear to be based on Defendants' failure to make required disclosures at the time of application or closing. Rather, Plaintiff alleges she sent a qualified written request to Defendants on February 21, 2012, requesting information relating to the servicing of the loan. FAC ¶ 111. Plaintiff alleges Defendants failed to respond within twenty days of the qualified written request, in violation of 12 U.S.C. § 2605(e)(1)(A). <u>Id.</u> ¶ 114. Plaintiff also alleges Defendants failed, within 60 days of receipt and after conducting an investigation, to provide Plaintiff with a written explanation or clarification that included the information requested by Plaintiff, or an explanation of why the information is unavailable, in violation of 12 U.S.C. § 2605(e)(2)(C). <u>Id.</u> ¶ 115. Thus, the three year statute of limitations began to run either 20 days or 60 days from the date of the qualified written request. Plaintiff filed this action on March 27, 2012. Accordingly, Plaintiff's Fourth Cause of Action is not time-barred.

### 3.    TILA (Seventh Cause of Action)

Plaintiff alleges Defendants violated TILA by failing to provide her with accurate material disclosures relating to adjustable rate mortgages and by failing to offer her other loan products that might be more advantageous for a borrower under the same qualifying matrix. FAC ¶ 162. An action for damages under TILA must be brought within one year after the date of the occurrence of the violation. 15 U.S.C. § 1640(e). Based on Plaintiff's allegations, the alleged TILA violations occurred no later than August 5, 2005, the day the loan documents were signed. Thus, the time for filing a TILA claim ran on August 5, 2006. The Ninth Circuit has held that "the doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." <u>King v. State of California</u>, 784 F.2d 910, 915 (9th Cir. 1986). Plaintiff must provide facts "to explain how defendants concealed the true facts or why plaintiff could not otherwise have discovered the TILA violations at the consummation of the loan." <u>Wong v. American Servicing Co., Inc.</u>, No. 2:09-CV-01506

FCD/DAD, 2009 WL 5113516, *4 (E.D. Cal. Dec. 18, 2009).  Plaintiff argues that equitable

tolling should apply because a reasonable person would not discover the concealed disclosures

until there was a significant change in the loan's terms that would alert them to possible

discrepancies, such as a dramatic increase in the loan payment.  FAC ¶ 165.  Plaintiff alleges her

loan was not scheduled to have a substantial payment change until October 1, 2010, and therefore

that is the earliest date on which she could have been expected to discover the fraud.  However,

this does not excuse Plaintiff from exercising due diligence until that date.  The Truth in Lending

Disclosure Statement, dated August 5, 2005, clearly stated that the monthly loan payment would

increase to $4,419.44 on October 1, 2010.  See FAC, Ex. A.  "[W]hen a plaintiff fails to allege

any facts demonstrating that the TILA violations alleged could not have been discovered by due

diligence during the one-year statutory period, equitable tolling should not be applied." Lingad v.

IndyMac Fed. Bank, 682 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010); see also Meyer v. Ameriquest

Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003) ("[Plaintiffs] were in full possession of all

information relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the

day the loan papers were signed.").  Moreover, even if Plaintiff's claim was tolled until October

1, 2010, the one-year limitations period has run.  Accordingly, Plaintiff's Seventh Cause of

Action for violation of TILA is subject to dismissal because it is time-barred.

### 4.      Rescission (Eighth Cause of Action)

Plaintiff claims she is entitled to rescind the loan transaction based on 1) TILA violations;

2) failure to provide proper disclosures; 3) intentional fraudulent acts; 4) fraudulent concealment;

and 5) public policy grounds.  A plaintiff's right of rescission under TILA expires three years

after the date of consummation of the transaction.  As discussed above, the loan was recorded on

August 12, 2005.  The three-year limitations period not only governs the institution of a lawsuit,

it also "operates, with the lapse of time, to extinguish the right of rescission." Beach v. Ocwen

Fed. Bank, 523 U.S. 410, 412, 118 S. Ct. 1408, 1409 (1998).  As the Ninth Circuit has

recognized, "§ 1635 is a statute of repose, depriving the courts of subject matter jurisdiction

when a § 1635 claim is brought outside the three year limitation period." Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002). Therefore, the time for filing an action for rescission under TILA expired on August 12, 2008. Similarly, rescission based on fraud is governed by a three-year statute of limitations. See Cal. Code Civ. P. § 338(d). As discussed above, Plaintiff has failed to allege facts to support the application of the discovery rule to her fraud claims. Finally, Plaintiff has failed to allege any public policy that would require equitable tolling of the three-year limitations period. Plaintiff's Eighth Cause of Action is therefore subject to dismissal because it is time-barred.

### 5.     Predatory Lending (Ninth Cause of Action)

Plaintiff alleges Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, by marketing the loan in a way that failed to fully disclose all material terms and included terms and conditions which are unfair, fraudulent, and unconscionable. FAC ¶ 181. Claims based on a violation of § 17200 are subject to a four-year statute of limitations. See Cal. Bus. & Prof. Code § 17208. "[T]he language of section 17208 admits of no exceptions . . . Any action on any UCL cause of action is subject to the four-year period of limitations created by that section." Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 179 (Cal. 2000) (emphasis in original). Plaintiff's UCL claim is based on Defendants' alleged misconduct and omissions during the loan application process. Thus, Plaintiff's UCL claims accrued at the latest on August 12, 2005, the date the loan documents were recorded. The four-year period of limitations expired on August 12, 2009. Plaintiff again contends the limitations period should be tolled until Plaintiff discovered the allegedly fraudulent facts used by Defendants to qualify her for the loan. However, as discussed above, Plaintiff failed to plead facts tending to show that conduct alleged could not have been discovered within the period of limitations through the exercise of due diligence. Accordingly, Plaintiff's Ninth Cause of Action is subject to dismissal because it is time-barred.

### 6.     Unfair and Deceptive Business Practices (Tenth Cause of Action)

14

Plaintiff alleges Defendants violated California's Cal. Civ. Code § 1920(a) and § 1921(b) by failing to undergo a diligent underwriting process when originating the loan and by providing information regarding adjustable-rate mortgages without providing a copy of the Consumer Handbook on Adjustable Rate Mortgages.  FAC ¶¶ 213, 221.  Plaintiff also bases her claims on Defendants' denial of her loan modification applications and alleged violations of Cal. Civ. Code § 2923.5.  The time for commencing an action based on a liability created by statute, other than for penalty or forfeiture, is three years.  See Cal. Code Civ. P. § 338(a).  Plaintiff's claims relate to the origination of the loan.  Plaintiff began negotiating her loan in or around May 2005, and the loan documents were recorded on August 12, 2005.  Thus, at the latest, her claims accrued on or before August 12, 2005.  The three-year limitations period ran on August 12, 2008.  Plaintiff has not alleged facts to support equitable tolling of this cause of action.  Accordingly, Plaintiff's Tenth Cause of Action is subject to dismissal because it is time barred.

### 7.      Negligence (Eleventh Cause of Action)

Plaintiff's negligence claim is based upon an alleged violation of the Home Owners Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639.  Plaintiff contends that, under HOEPA, Defendants owed her a duty to comply with state consumer protection laws, properly service the loan, use consistent methods to determine modification approvals, and offer foreclosure alternatives to Plaintiff prior to default.  HOEPA was enacted as an amendment to TILA and is therefore subject to the same one-year statute of limitations for a damages claim.  Consumer Solutions REO, LLC v. Hillery, 658 F.Supp.2d 1002, 1008 (N.D.Cal. 2009) ("As HOEPA is simply part of TILA, it is governed by the same statute of limitations.").  Accordingly, for the same reasons discussed above with respect to the TILA damages claim, Plaintiff's Eleventh Cause of Action is subject to dismissal because it is time-barred.

### D.      Rule 12(b)(6)

Defendants further argue that each of Plaintiff's causes of action fails to state a claim upon which relief can be granted.  Because the Court finds that the First, Seventh, Eighth, Ninth,

Tenth, and Eleventh Causes of Action are untimely, it does not reach Defendants' remaining arguments as to those claims.  The Second, Third, Fourth, Fifth, Sixth, Twelfth, and Thirteenth Causes of Action are addressed below.

### 1.     Violation of California Civil Code § 2923.5 (Second Cause of Action)

Plaintiff's Second Cause of Action seeks to set aside the trustee's sale date based on wrongful foreclosure.  Specifically, Plaintiff claims Defendants initiated foreclosure proceedings without first attempting to contact her, in violation of California Civil Code § 2923.5.  Section 2923.5 requires that, at least 30 days prior to filing a notice of default, the lender must contact the borrower and explore options for the borrower to avoid foreclosure.  See Cal. Civ. Code. § 2923.5(a).  To demonstrate compliance with this section, lenders filing a notice of default must attach a declaration stating that the lender either contacted the borrower or that the lender tried with due diligence to contact the borrower.  See Cal. Civ. Code. § 2923.5(b).  Under Section 2923.5(g), "due diligence" requires the lender to contact the borrower by a first class letter that includes a toll-free number for the United States Department of Housing and Urban Development ("HUD"), then attempt to contact the borrower by telephone at least three times on different days at different hours, and then attempt to contact the borrower with an automated system that connects the borrower to a live representative; if the borrower does not respond within two weeks, the lender must also send a certified letter with a return receipt, provide a means for the borrower to contact the lender in a timely manner, and post a prominent link on the homepage of the lender's internet website.  See Cal. Civ. Code § 2923.5(g).

Plaintiff alleges Defendants (1) did not send Plaintiff a first class letter that included a toll-free number for the United States Department of Housing and Urban Development; (2) did not attempt to contact Plaintiff by telephone at least three times, at three hours, and or different days prior to filing a Notice of Default; and (3) did not send a certified letter to Plaintiff with return receipt requested.  FAC ¶¶ 80-82.  Defendants maintain that because the January 20, 2011, Notice of Default contains a declaration stating that "Bank of America Home loans . . . tried with

due diligence to contact the borrower in accordance with California Civil Code Section 2923.5," Plaintiff's conclusory allegations of failure to comply must be disregarded.  RJN, Ex. B.  In support of this contention, Defendants cite <u>Mabry v. Super. Court of Orange County</u>, which held that a declaration in a notice of default that tracks the language of § 2923.5(b) complies with the statute's requirements.  <u>See</u> 185 Cal. App. 4th 208, 214 (Cal. App. 2010).  However, the <u>Mabry</u> court did not hold that the declaration at issue was conclusive evidence that the requirements of § 2923.5 had been met.  <u>Id.</u> at 235.  Rather, because the parties presented different factual stories regarding compliance, the <u>Mabry</u> court remanded the case for an evidentiary hearing on whether the defendant lender had in fact complied with § 2923.5.  <u>Id.</u> at 235-36.

In this case, there is a factual dispute as to whether Defendants met the requirements of § 2923.5.  On a motion to dismiss, the Court accepts as true Plaintiff's well-pled allegations and draws all inferences in the light most favorable to Plaintiff, as the non-moving party.  <u>See Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519 F.3d 1025, 1031 (9th Cir. 2008).  Accordingly, Defendant's motion to dismiss Plaintiff's Second Cause of Action shall be denied.

**2. Violation of California Civil Code § 2923.6 (Third Cause of Action)**

Plaintiff's Third Cause of Action alleges Defendants violated California Civil Code § 2923.6 by failing to offer her a loan modification, and seeks injunctive relief prohibiting Defendants from exercising the power of sale.  FAC ¶¶ 107-108.  Specifically, Plaintiff claims § 2923.6 extends Defendants' Pooling and Servicing Agreement ("PSA") "by providing that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."  FAC ¶ 94.  Defendants argue that California courts have held that § 2923.6 represents only a statement of legislative intent, and that Plaintiff lacks standing because she has failed to allege she is a party to any PSA.  The plain language of § 2923.6 does not provide for a private right of action.  However, Plaintiff maintains that a private right of action under § 2923.6 is necessary to achieve the statute's policy objectives, and that § 2923.6 creates a private right of action because §

2923.5, which was enacted at the same time, was determined to create a private right of action in the absence of an express private right of action.  Plaintiff is incorrect.  "Section 2923.6 does not require loan servicers to modify loans, and it does not create a private right of action for borrowers."  Rodriguez v. JP Morgan Chase & Co., 809 F.Supp.2d 1291, 1296 (S.D. Cal. 2011); see also Mabry, 185 Cal. App. 4th at 222 ("[S]ection 2923.6 . . . does not operate substantively.  Section 2923.6 merely expresses the hope that lenders will offer loan modifications on certain terms.").  Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Third Cause of Action with prejudice.

### 3.       Violation of RESPA (Fourth Cause of Action)

As discussed above, Plaintiff's Fourth Cause of Action alleges Defendants violated RESPA by failing to respond properly to her qualified written request ("QWR").  RESPA provides that a borrower may send her loan servicer a QWR requesting information relating to the servicing of her mortgage.  See 12 U.S.C. § 2605(e).  After receiving a QWR, a servicer must acknowledge its receipt within 20 days and respond to inquiries within 60 days.  See 12 U.S.C. §§ 2605(e)(1)(A) and 2605(e)(2).  Under the statute, a QWR is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower

12 U.S.C. § 2605(e)(1)(B).  Plaintiff has attached to the FAC two letters from her attorney addressed to Recontrust and BANA.  FAC, Ex. D.  The letters request documents relating to Defendants' servicing and collection of Plaintiff's loan, a detailed history of receipts and payments, and reports to credit bureaus.  Id.  The letters also state that until a written response is given, Plaintiff disputes the amount owing on her account.  Id.  Plaintiff alleges Defendants failed to acknowledge receipt of the QWRs within 20 days, and failed to respond within 60 days.  FAC ¶¶ 114, 115.  Plaintiff further alleges Defendants violated 12 U.S.C. § 2605(e)(3), which

18

prohibits a servicer from providing "any information regarding an overdue payment . . . to any consumer reporting agency," during the 60-day period from the servicer's receipt of the borrower's QWR relating to a dispute regarding the borrower's payments. FAC ¶ 116.  Plaintiff alleges Defendants failure to comply with 12 U.S.C. § 2605(e)(3) caused Plaintiff significant injury to her credit score and prevented her from obtaining additional credit.  Id. ¶ 123. However, Plaintiff alleges no facts with respect to this violation, such as when the reporting occurred, to which agencies the reporting was made, or whether information regarding an overdue payment was included in such a report.  Without more, the FAC cannot state a claim for violation of RESPA based on § 2605(e)(3).

Defendants contend the letters attached to the FAC cannot be considered QWRs because they were executed by Plaintiff's attorney and not by Plaintiff herself.  The Court is unpersuaded by this argument.  Under RESPA, a QWR may be sent to a servicer by "the borrower (or an agent of the borrower)."  Both letters clearly state the request is being made "specifically on behalf of my Client, who may also be referred to in those documents as 'Borrower.'"  Id.  Defendants further argue that RESPA does not apply to Recontrust, as Recontrust is not a "servicer" within the meaning of the statute.  "Servicer" is defined by RESPA as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  12 U.S.C. § 2605(i)(2).  The FAC contains no facts that would support the contention that Recontrust is the servicer of Plaintiff's loan.  Rather, the FAC asserts Recontrust is BANA's trustee.  FAC ¶ 32.  Therefore, only the letter addressed to BANA can properly be considered a QWR.

Plaintiff alleges the letters were mailed to Recontrust and BANA on or about February 21, 2012.  FAC ¶ 111.  The 20-day period for Defendants to acknowledge receipt of the QWR expired on or about March 13, 2012.  However, the FAC was filed on April 16, 2012, before the expiration of the 60-day period to investigate and respond to inquiries under 12 U.S.C. § 2605(e)(2).  Therefore, the claim under § 2605(e)(1)(A) is timely, but the claim under §

2605(e)(2) is premature.  However, "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages."  Allen v. United Financial Mortg. Corp., 660 F.Supp.2d 1089, 1097 (N.D. Cal. 2009) (quoting Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)).  Plaintiff alleges she has been damaged as a result of Defendants' failure to respond to her QWR amount of ongoing fees, penalties, and interest charged by Defendants, including a 5% charge of her overdue payment of principal and interest not received in full by the end of fifteen calendar days after it was due, which began on our about September 2008.  FAC ¶ 121.  Plaintiff further states she incurred copying charges, postal fees, and a loss of income due to considerable time away from her employment preparing and sending the QWR, and attempting to contact Defendants inquiring about the whereabouts of their response.  FAC ¶ 122.  These damages do not appear to relate to Defendants' alleged failure to acknowledge the QWR within 20 days under § 2605(e)(1)(A), but rather the alleged failure to respond within 60 days under § 2605(e)(2).  Because the claim under § 2605(e)(2) is premature, and because Plaintiff alleges no damages resulting from the alleged violation of  § 2605(e)(1)(A), the Court will grant Defendants' motion to dismiss the Fourth Cause of Action.

### 4.      Breach of Contract (Fifth Cause of Action)

Plaintiff's Fifth Cause of Action for breach of contract is based on her assertion that she is a third party beneficiary of BANA's Service Participation Agreement ("SPA") with the Federal National Mortgage Association ("Fannie Mae") under HAMP, pursuant to which BANA agreed to perform certain loan modification and foreclosure prevention services for eligible loans.  See Court's Docket, Doc. No.12.  Plaintiff alleges Defendants breached the agreement by failing to provide her with an explanation for ending her three month trial loan modification or, alternatively, by failing to offer her a loan modification.  FAC ¶ 131.  Plaintiff alleges she complied with all the terms and conditions of the three month trial modification, made the monthly payments for all three months, and continued paying the monthly payment under the

modification for an additional three months.  Id. ¶ 129.  After six months, BANA informed Plaintiff that the trial period had ended and her mortgage payment would return to its original level.  Id. ¶ 130.  Plaintiff alleges she was given no explanation or reason for the denial of a permanent loan modification.  Id. ¶ 131.  Plaintiff further alleges BANA representatives promised and reassured her that they would not proceed with foreclosure while they reviewed any loan modification application pursuant to HAMP.  Id. ¶ 136.

Defendants contend Plaintiff's breach of contract claim fails because borrowers do not have a private right of action to sue lenders or loan servicers for an alleged failure to provide a loan modification under HAMP.  Defendants argue Plaintiff is not an intended third party beneficiary of the HAMP.  "Numerous district courts within the Ninth Circuit have ruled that there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP." Cleveland v. Aurora Loan Serv., LLC, slip copy, 2011 WL 2020565 (N.D.Cal. May 24, 2011), at *4 (see authorities cited therein).  Furthermore, "numerous courts have determined that individual borrowers do not have standing to sue under a HAMP SPA because they are not intended third-party beneficiaries of the SPA." Id.  Because Plaintiff does not have a private right of action against Defendants for a violation of HAMP, her breach of contract claim fails inasmuch as it is predicated on an alleged violation of HAMP or a failure to negotiate a loan modification.  To the extent Plaintiff's claim is based on BANA's failure to extend her trial modification to a permanent modification, the claim also fails.  There are no facts in the FAC tending to suggest that the terms of the trial modification agreement required BANA to grant a permanent modification, or to provide an explanation for denying a permanent loan modification.  The Court will therefore grant Defendants' motion to dismiss the Fifth Cause of Action.

**5.     Breach of Implied Covenant of Good Faith and Fair Dealing (Sixth Cause of Action)**

Plaintiff's Sixth Cause of Action alleges Defendants breached the implied covenant of good faith and fair dealing owed to Plaintiff because they "disingenuously approached the loan

modification process, initially entertaining, but proceeding to willfully ignore Plaintiff's attempts for a loan modification and willfully failing to inform Plaintiff of the results of her loan. modification applications, including the results of the HAMP applications, as required under the SPA agreement." FAC ¶ 153.  Defendants contend this claim fails for the same reasons as the breach of contract claim, namely because it is a veiled HAMP claim.

Under California law, "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract." Digerati Holdings, LLC v. Young Money Entertainment, LLC, 194 Cal. App. 4th 873, 885 (Cal. App. 2011).  However, California courts have held that the covenant cannot impose substantive duties beyond those explicitly incorporated in the contract.  See Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 349-50 (Cal. 2000).  The FAC does not suggest that Defendants had a contractual duty to provide Plaintiff with a loan modification, and California law does not impose such a duty on lenders.  See Hamilton v. Greenwich Investors, 195 Cal. App. 4th 1602, 1617 (Cal. App. 2011); Pazargad v. Wells Fargo Bank, 2011 WL 3737234, at *3 (C.D. Cal. Aug. 23, 2011).  Because the Court finds that Plaintiff cannot state a breach of contract claim for failure to provide a loan modification, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing also fails.  The Court will grant Defendants' motion to dismiss the Sixth Cause of Action.

### 6.    Declaratory Relief (Twelfth Cause of Action)

Plaintiff also asserts a cause of action for declaratory relief. Specifically, Plaintiff alleges that Defendants wrongfully initiated a foreclosure proceeding against Plaintiff's home and therefore Plaintiff will sustain irreparable injury through the permanent loss of her home.  FAC ¶¶ 180-81.  This cause of action is a request for relief predicated on the viability of Plaintiff's substantive causes of action for wrongful foreclosure. Because the Court will dismiss the substantive causes of action, Plaintiff's Twelfth Cause of Action for declaratory relief shall also

be dismissed.[4]

### 7.      Quiet Title (Thirteenth Cause of Action)

Plaintiff's final cause of action seeks to quiet title against BANA and anyone else claiming an interest in the subject property.  FAC ¶ 257.  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  Shimpones v. Stickney, 219 Cal. 637, 639, 28 P.2d 673 (Cal. 1934); see also Miller v. Provost, 26 Cal. App. 4th 1703, 1707 (Cal. App. 1994).  Defendants argue Plaintiff cannot prevail on her quiet title claim because she does not allege that she has tendered or is currently ready, willing and able to tender the entire amount due under the mortgage loan.  Plaintiff counters that tender is not required where it is inequitable to require one, or where the action attacks the validity of the underlying debt.  In an action for wrongful foreclosure, it is true that "tender may not be required where it would be inequitable to do so," or where the action attacks the validity of the underlying debt, because tender would constitute an affirmation of the debt.  Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997).  However, these exceptions to the tender rule do not apply in an action to quiet title.  "Quiet title is an equitable claim, a plaintiff in equity must do equity in order to obtain relief.  This means repaying the money borrowed before voiding the security for the loan."  Chavez v. Bank of America, 2010 WL 1854087, at *14 (E.D. Cal. May 6, 2010).  To prevail on a quiet title claim, a plaintiff must show that he has title superior to that of the defendant.  See Gerhard v. Stephens, 68 Cal.2d 864, 918 (Cal. App. 1968).  Plaintiff has not alleged that she has paid the outstanding mortgage debt, and therefore the Court will grant Defendants' motion to dismiss the Thirteenth Cause of Action for quiet title.

---

[4] California courts have also rejected a claim for declaratory relief where the claim was "nothing more than the repeat of the legal theory" asserted in the wrongful foreclosure claim.  See Gomes v. Countrywide Home Loans, 192 Cal. App. 4th 1149, 1154-44 (Cal. App. 2011); accord Robinson v. Countrywide, 199 Cal. App. 4th 42, 46 (Cal. App. 2011).

**CONCLUSION AND ORDER**

Accordingly, it is HEREBY ORDERED that:

1.     Defendants' Motion to Dismiss Plaintiff's First Amended Complaint is GRANTED IN PART and DENIED IN PART.

2.     Plaintiff's First, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action are dismissed with leave to amend to adequately allege equitable tolling.

3.     Plaintiff's Third Cause of Action is dismissed with prejudice.

4.     Plaintiff's Fourth, Fifth, Sixth, Twelfth, and Thirteenth Causes of Action are dismissed with leave to amend consistent with this Order.

5.     Plaintiff shall file any Second Amended Complaint within 20 days of service of this Order.


IT IS SO ORDERED.


Dated:    July 17, 2012    

CHIEF UNITED STATES DISTRICT JUDGE