IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARIA FLORA URBANO,** an individual<br>　　　　　　　Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., successor in interest to COUNTRYWIDE BANK, a N.A.; RECONTRUST COMPANY, N.A., a wholly-owned subsidiary of BANK OF AMERICA, N.A.; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiff's title thereto, and DOES 1 through 25, inclusive,<br>　　　　　　　Defendants. | 1:12-CV-00464 AWI SMS<br><br>**ORDER ON DEFENDANTS' MOTION TO STRIKE AND MOTION DISMISS SECOND AMENDED COMPLAINT**<br><br>(Doc. No. 20, 21) |

## INTRODUCTION

This case arises out of a mortgage loan transaction. Plaintiff Maria Flora Urbano ("Plaintiff") brings suit against Defendants Bank of America, N.A., as successor by merger to Countrywide Bank FSB, erroneously sued as Bank of America, N.A., successor in interest to Countrywide Bank, N.A. ("BANA"); and ReconTrust Company, N.A., a wholly owned subsidiary of Bank of America, N.A. ("ReconTrust") (collectively, "Defendants"). On July 18, 2012, the Court granted Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC"). *See* Court's Docket, Doc. No. 17. On August 7, 2012, Plaintiff filed a Second Amended Complaint ("SAC") alleging causes of action for: (1) fraud in origination of loan; (2) set aside pending trustee sale based upon wrongful foreclosure in violation of California Civil Code § 2923.5; (3) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA"); (4) breach of contract; (5) breach of implied covenant of good faith and fair

dealing; (6) violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"); (7) rescission; (8) predatory lending in violation of California Business & Professions Code § 17200; (9) unfair and deceptive business practices in violation of California Civil Code § 1920(a) and § 1921(b); ( 10) negligence; (11) declaratory relief; and (12) quiet title. *See id.*, Doc. No. 18. Defendants now move to dismiss and to strike portions of the Second Amended Complaint. *See id.*, Doc. Nos. 20, 21.  For the reasons stated herein, Defendants' motion to strike shall be granted, and the motion to dismiss shall be granted in part and denied in part.

## ALLEGED FACTS[1]

Plaintiff obtained an Option Adjustable Rate Mortgage loan from Countrywide Bank[2] in the amount of $693,500 to finance the purchase of residential property located at 2202 E. Hogan Avenue, Fresno, CA, 93720.  *See* SAC ¶ 27.  The loan was secured by a Deed of Trust ("DOT") which was recorded in Fresno County on August 12, 2005.  *See* SAC, Ex A; RJN, Ex. A.  The DOT provides that upon breach of the loan agreement, the lender can give notice to accelerate. *Id.*  Plaintiff alleges she informed a loan agent from Countrywide Bank that her monthly income was approximately $9,000 per month.  SAC ¶ 29.  Plaintiff further alleges that "[f]rom the time the loan application began through the time of the loan closing, Plaintiff was never given the opportunity to review the loan application.  In addition, she was never informed of the contents that [Countrywide] Agent placed therein."  SAC ¶ 30.  At the time of the loan closing, Plaintiff

---

[1] The facts stated herein are taken from the SAC and Defendants' Request for Judicial Notice, Court's Docket, Doc. No. 22 ("RJN").  The subjects of the RJN include: a Deed of Trust recorded on August 12, 2005; a Notice of Default and Election to Sell Under Deed of Trust recorded on January 20, 2011; a Notice of Trustee's Sale recorded on August 2, 2011; a U.S. Bankruptcy Court for the Eastern District of California docket for Bankruptcy Petition #11-62125; and a U.S. Bankruptcy Court for the Eastern District of California Notice of Entry of Order of Dismissal Without Discharge for Bankruptcy Petition #11-62125.  Plaintiff filed no objections to the request for judicial notice.  Public documents are the proper subject of judicial notice.  *See* Fed. R. Evid. 201(b); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986); *Fortaleza v. PNC Fin. Serv. Grp., Inc.,* 642 F.Supp.2d 1012, 1019 (N.D.Cal.2009).  The Court therefore grants Defendants' request.

[2] On April 27, 2009, Countrywide Bank, FSB, converted to a national banking association under the title of Countrywide Bank, National Association, and immediately thereafter merged with and into Defendant BANA.  *See* Court's Docket, Doc. No. 21, n..2.

alleges the following facts were not disclosed to her:

    a. The monthly payment on the Loan could increase after one (1) year and would dramatically increase after five (5) years because of the increase in the interest rate and the negative amortization component of the loan;

    b. Plaintiff qualified for the Loan in the amount of $632,000.00 because her income was inflated and falsified in the Application;

    c. The ARM interest rate could increase to 9.95%;

    d. There was a Prepayment Penalty described in an addendum, which stated that within twelve (12) months after the execution of the Note, if Plaintiff made prepayment(s), exceeding twenty percent (20%) of the original Principal amount of the Note, Plaintiff would have to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which her prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeded twenty percent (20%) of the original principal amount of the Note. Interest would be calculated using the rate in effect at the time of prepayment;

    e. Agent received a commission of $14,226.75 for closing the Loan through a "Lock in Agreement";

    f. Plaintiff had the right to rescind the Loan within 3 days of signing.

*Id.* ¶ 33. It was not until Plaintiff attempted to modify her loan that she discovered the loan application had falsely stated her monthly income was $10,675, with additional income stated under "other" as $4,292.00. *Id.*

In or about February 2008, Plaintiff became ill and was placed on restricted duty at work for the next two and a half years. *Id.* ¶ 35. In or about September 2008, Plaintiff could no longer make her loan payments and requested assistance from BANA for a loan modification. *Id.* ¶ 36. Although BANA officials told her they were unable to offer her any loan workout options, Plaintiff applied for a loan modification through the Homes Affordable Modification Program ("HAMP"). *Id.* ¶¶ 36-37. That loan modification application was denied because Plaintiff made too much money. *Id.* ¶ 37. In or about early 2009, Plaintiff applied for an in-house loan modification, which was also denied because she made too much money. *Id.* ¶ 38. Later in 2009, Plaintiff sought the assistance of a third-party company to obtain a loan modification. *Id.* ¶ 39. The third-party company contacted BANA, and Plaintiff was offered a three month trial modification. *Id.* After making the payments under the trial modification for six months,

3

Plaintiff was informed that the trial period had ended and her payments would return to their original amount. *Id.* Plaintiff then sought the assistance of a non-profit organization, but after five to seven months of resubmitting documents and negotiation, Plaintiff was again denied a loan modification. *Id.* ¶ 40.

On January 20, 2011, ReconTrust recorded and sent a Notice of Default to Plaintiff informing her that she was $53,584.97 in default. *Id.* ¶ 31; RJN, Ex. B. On August 2, 2011, ReconTrust recorded a Notice of Trustee Sale under the DOT. SAC ¶ 42; RJN, Ex. C. In or about November 2011, Plaintiff hired another third-party company to assist her in obtaining a loan modification through HAMP. *Id.* ¶ 43. Per the Notice of Trustee Sale, the original sale date was set for August 24, 2011, but was subsequently postponed to November 7, 2011. *Id.* ¶ 100; RJN, Ex. C. On November 7, 2011, Plaintiff filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of California. *See* RJN, Ex. D. On February 17, 2012, Plaintiff's Chapter 13 matter was dismissed without entry of discharge. *Id.*, Ex. E. The November 7, 2011 sale date was cancelled, but Plaintiff alleges BANA is still in the process of foreclosing. SAC ¶ 100.

## LEGAL STANDARD

**A.     Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); see Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. *Daniels–Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.2010). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

**B.     Motion to Strike**

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial.  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983).  Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994).  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.* 984 F.2d at 1527.  "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Lindblom v. Secretary of Army*, No. 2:06-cv-2280-GEB-GGH, 2007 WL 1378019, *1 (E.D.Cal. May 10, 2007) (quoting *Campbell v. PricewaterhouseCoopers, LLP,* No. CIV. S-06-2376 LKK/GGH, 2007 WL 841694, *2 (E.D.Cal. Mar. 20, 2007)). "[A] motion to strike may be

5

used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479 (C.D. Cal. 1996); *see also Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005).

**DISCUSSION**

**A.     Motion to Dismiss**

Plaintiff's SAC reasserts the majority of the claims made in the original Complaint and FAC. Likewise, Defendants now move for dismissal on grounds similar to those raised in their motion to dismiss the FAC. Defendants advance several arguments in support of their position that the SAC is universally defective. Primary among these is the contention that all of Plaintiff's claims that would normally have accrued as of the date of the origination of the loan are now time-barred. Second, given that Plaintiff has not alleged tender or the ability to tender the full amount owing under the loan, any of the claims for relief that challenge or seek damages relating to the foreclosure process are barred. Third, Defendants contend that several of Plaintiff's statutory claims must fail because the statutes do not contain a private right of action. Finally, Defendants allege that each of Plaintiff's claims fails individually. The Court will first address the defenses that may be asserted against multiple claims for relief. The Court will then address individual claims as necessary.

*1.     Statutes of Limitations and Equitable Tolling*

In its prior order, the Court dismissed as time-barred Plaintiff's claims for fraud in the origination of the loan, violation of TILA, rescission, predatory lending, unfair and deceptive business practices, and negligence. *See* Court's Docket, Doc. No. 17 at 10-15. The Court found Plaintiff had failed to allege a basis for tolling the applicable statutes of limitations.[3] *Id.* The

---

[3] The statutes of limitations that apply to Plaintiff's claims are:

(1) Fraud in origination of the loan - three years. *See Cal. Code Civ. P.* § 338(d).

(2) Violation of TILA - one year for damages; three years for rescission. *See* 15 U.S.C. §§

6

SAC realleges each of these causes of action. Defendants argue Plaintiff has again failed to allege facts to support equitable tolling. Plaintiff alleges she did not discover the misrepresentations and fraudulent facts used by Defendants to qualify her for the loan until she received a Notice of Trustee's Sale dated January 2, 2011,[4] which stated that Plaintiff's original loan balance had ballooned by more than $125,000, putting her on notice that the terms she believed she obtained differed from the actual terms of the loan. SAC ¶ 164. However, the Court finds Plaintiff has again failed to plead facts that would give rise to a basis for equitable tolling.

The doctrine of equitable tolling provides that "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered. . . ." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). "This equitable doctrine is read into every federal statute of limitation." *Id.* In determining justifiable application of the equitable tolling doctrine, the court "focuses on excusable delay by the plaintiff." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). Excusable delay by the plaintiff is defined as whether a reasonable plaintiff would not have known of the existence for a possible claim within the limitations period. *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). To establish excusable delay,

---

1640(e); 1635(f).

(3) Predatory lending - four years. *See Cal. Bus. & Prof. Code* § 17208.

(4) Unfair and deceptive business practices - three years. *See Cal. Civ. Code* 338(a).

(5) Negligence - one year based on violation of the Home Owners Equity Protection Act, *see Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1008 (N.D. Cal. 2009); two years under California law. *See Cal. Civ. Code* § 339(1).

[4] Defendants note that in the FAC, Plaintiff alleged that she "did not discover the fraudulent facts . . . used by Defendants to qualify her for the loan until [she] received the original loan documents in the past few months in preparation for any application for a loan modification." FAC ¶ 204. However, regardless of which discovery date is used, the Court finds Plaintiff has failed to plead any facts that would merit equitable tolling of Plaintiff's claims until that date. The inconsistency of the FAC and SAC is therefore of no moment.

the plaintiff must show "fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." *Federal Election Com'n v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996). California courts also impose a duty upon a plaintiff asserting a fraud-based claim to exercise reasonable diligence to discover the facts constituting the fraud. *See Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1525 (Cal. App. 1995).

Plaintiff relies on her allegations that she was not provided with the loan documents prior to signing, that Defendants never explained the loan documents to her, and that she felt pressured into signing the loan documents quickly and therefore did not read them prior to or at the time of signing. SAC ¶ 32. As the court previously found, these facts do not support a finding of excusable delay by the Plaintiff. *See* Court's Docket, Doc. No. 17 at 10. Plaintiff further argues that even though the material facts could arguably be distilled from the loan documents through careful analysis, equitable tolling applies because Defendants can nevertheless be deemed to have concealed or suppressed the material facts. In support of this argument, Plaintiff relies on *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230 (Cal. App. 2011), in which the California Court of Appeal found that the plaintiff borrowers had stated a claim for fraud where they alleged that material facts giving rise to their claims were concealed by inaccurate representations and half-truths. *Id.* at 249. The Court of Appeal found that

> If plaintiffs can show defendant intentionally used its Option ARM forms to deceive borrowers, plaintiffs may be able to establish a fraud claim. Plaintiffs' actual interest rates and monthly payments sufficient to amortize the loan (or at least pay the accruing interest) were hidden in the complexity of the Option ARM contract terms.

*Id.* Unlike this case, however, the *Boschma* court was analyzing the plaintiffs' fraud claim, not considering whether the claim itself should be equitably tolled. Accordingly, *Boschma* is inapposite. Viewing the facts in the light most favorable to Plaintiff, and assuming there was concealment of the operative facts that form the basis for Plaintiff's claims, she has failed to allege "due diligence by the plaintiff until discovery of those facts." *Williams*, 104 F.3d at 240-

8

41.

Accordingly, for the same reasons stated in the court's prior order dismissing the FAC, Plaintiff's claims for fraud (First Cause of Action); violation of TILA (Sixth Cause of Action); rescission (Seventh Cause of Action); predatory lending (Eighth Cause of Action); unfair and deceptive business practices (Ninth Cause of Action); and negligence (Tenth Cause of Action) are time-barred and shall be dismissed without leave to amend. *See* Court's Docket, Doc. No. 17 at 10-15.

   2.   *Violation of California Civil Code § 2923.5*

Plaintiff's Second Cause of Action again seeks to set aside the trustee's sale based on wrongful foreclosure. Specifically, Plaintiff claims Defendants initiated foreclosure proceedings without first contacting her, as required by California Civil Code § 2923.5. SAC ¶ 87. Section 2923.5 requires that, at least 30 days prior to filing a notice of default, the lender must contact the borrower and explore options for the borrower to avoid foreclosures. *See Cal. Civ. Code* § 2923.5(a). To demonstrate compliance with this section, lenders filing a notice of default must attach a declaration stating that the lender either contacted the borrower or that the lender tried with due diligence to contact the borrower. *See Cal. Civ. Code* § 2923.5(b). A notice of default may be filed without prior contact if there was due diligence to contact the borrower by telephone, certified mail, or other means specified in the statute. *See Cal Civ.Code* 2923.5(g). Here, the publically recorded Notice of Default included a declaration stating that "Bank of America Home Loans "tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5." RJN, Ex. B. California courts have held that while such a declaration satisfies the statute's requirements, it is not conclusive evidence of compliance where the borrower contends the requirements of Section 2923.5 were not met. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (Cal. App. 2010). As the Court noted in its prior order, viewing the facts in the light most favorable to Plaintiff, there is a factual dispute as to whether the statutory requirements were actually fulfilled. *See* Court's Docket, Doc. No. 17 at

17.

The only remedy for violation of California Civil Code § 2923.5 is postponement of a scheduled foreclosure sale until there is compliance with the statute by the foreclosing party.[5] *See Mabry,* 185 Cal.App.4th at 231. In Plaintiff's case, the foreclosure sale has been postponed at least three times since 2009. *See* SAC ¶¶ 42-45, 100; RJN, Exs. C, D. The last sale date was November 7, 2011, and it does not appear to have been rescheduled. SAC ¶ 100. Accordingly, there is no remedy available to Plaintiff under § 2923.5. The relief Plaintiff seeks - an injunction prohibiting Defendants from *exercising their power of sale* - is beyond the scope of the statute. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's claim for violation of California Civil Code § 2923.5 (Second Cause of Action) without leave to amend.

### 3. *Violation of RESPA*

Plaintiff's Third Cause of Action alleges Defendants violated RESPA by failing to respond properly to her qualified written request ("QWR") within 60 days after receipt as required under 12 U.S.C. § 2605(e)(3). SAC ¶¶ 106-107. For purposes of RESPA, a QWR is defined as:

> a written correspondence, other than notice upon a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Plaintiff has attached to the SAC letters from her attorney requesting documents relating to Defendants' servicing and collection of Plaintiff's loan, a detailed history of receipts and payments, and reports to credit bureaus. SAC, Ex. D. The letters state that until a written response is given, Plaintiff disputes the amount owing on her account "because there are or may be charges, fees, costs or other line items for which my Client is unaware of contractual or legal authority for such charges." *Id.*

---

[5] This argument was not raised in the briefing on Defendants' Motion to Dismiss the FAC. Accordingly, the Court did not consider it when ruling on that motion.

10

Assuming for the purposes of this motion that Plaintiff's letter constitutes a QWR under the statute, in order to successfully maintain a RESPA claim, a plaintiff must adequately plead that he has sustained "actual pecuniary damages." *See Allen v. United Fin. Mortg. Corp.,* 660 F.Supp.2d 1089, 1097 (N.D.Cal.2009) ( "Although [RESPA] does not explicitly set this out as a pleading standard, a number of courts have read [it] as requiring a showing of pecuniary damages in order to state a claim.")  These "actual pecuniary damages" must, by the plain terms of § 2605(f)(1)(A), be a "result of the failure," *i.e.* must be caused by Defendants' violation of RESPA. *See Lal v. American Home Servicing, Inc.,* 680 F.Supp.2d 1218, 1223 (E.D.Cal.2010) (finding that in order to state a valid RESPA claim, alleged pecuniary damages must be "a direct result of the failure to comply"); *Givant v. Vitek Real Estate Indus. Grp, Inc.,* No. 2:11–cv–03158–MCE–JFM, 2012 WL 5838934, at *4 (E.D.Cal. Nov.15, 2012) ("The allegations of a RESPA QWR claim [also] must show that the RESPA violation proximately caused Plaintiff's damages.") (citations and quotation marks omitted). Plaintiff has not sufficiently alleged facts to show that the damages she claims were caused by Defendants' failure to respond.

The fatal problem with Plaintiff's claim that her inability to determine the amount Defendants allege is owed resulted in substantial fees and penalties is that she fails to allege facts sufficient to state a claim that Defendants' alleged failure to comply with RESPA caused the harm.[6] Plaintiff's only allegation regarding causation is a conclusory statement that "[a]s a proximate result of Defendants' actions, Plaintiff has been damaged in the amount of ongoing penalties, fees, and interest charged by Defendants. . ." SAC ¶ 114.  However, Plaintiff alleges these charges and fees began as early as September 2008, and by the time the Notice of Default was recorded on January 20, 2011, she had accrued $53,584.00[7] in past due principal, interest,

---

[6] Contrary to Plaintiff's assertions, copying costs and postal fees incurred in sending the alleged QWR, as well as time spent away from employment to prepare it, are not "actual pecuniary damages" resulting from Defendants' alleged failure to respond.

[7] Paragraph 121 of the SAC confusingly alleges that "[t]he Notice of Default states that as of March 28, 2011, Plaintiffs [sic] had accrued $1,332.72 in late charges, which charges have continued to accrue since that time." SAC ¶ 121. This inconsistent allegation appears to be a

11

and corresponding late charges. *Id.* Even construing the "actual pecuniary damages" provision of RESPA liberally, however, Plaintiff's bare statement of causation is belied by the facts alleged. Plaintiff has failed to explain how the past due amounts and late charges that she was aware of by at least January 20, 2011, could have been caused by Defendants' failure to respond to a letter dated February 21, 2012. Plaintiff's allegation that she has been "unable to determine what amount was solely allocated to penalties and late charges due to Defendants' failure to respond to Plaintiff's QWR" is insufficient to show that Defendants' actions caused actual pecuniary damages. *See Givant,* 2012 WL 5838934, at *4 (finding that a RESPA claim failed when a plaintiff failed to move beyond "conclusory and speculative allegations about the effects of failure to respond to a QWR's laundry list of requests for information" and failed to explain how a servicer's failure to respond to the QWR proximately caused her damage) (citation and quotation marks omitted).

Finally, to the extent the SAC alleges that defendants violated 12 U.S.C. § 2605(e)(3) by providing information to consumer reporting agencies during the 60 day statutory period,[8] this allegation, on its own, is insufficient to assert a violation of § 2605(e)(3). It is wholly conclusory and fails to describe when and to whom Defendants allegedly provided the information. *See, e.g., Midouin v. Downey Sav. & Loan Ass'n, F.A.,* 834 F.Supp.2d 95, 110–12 (E.D.N.Y. 2011); *Jones v. Select Portfolio Servicing, Inc.,* No. 08-972, 2008 WL 1820935, at *10 (E.D.Pa. Apr.22, 2008). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678. Plaintiff has had ample opportunity to amend her RESPA

---

typographical error and is not supported by the record. *See* RJN, Ex. B (stating "[t]his amount is $53,584.91, as of 01/19/2011 and will increase until your account becomes current.")

[8] Title 12 U.S.C. Section 2605(e)(3) provides:

> During the 60–day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to any dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency ....

12

claim yet still fails to state a claim, her RESPA claim (Third Cause of Action) is dismissed without leave to amend.

### 4. Breach of Contract

Plaintiff's Fourth Cause of Action for breach of contract is based on her assertion that Defendants breached an agreement to offer Plaintiff a three-month trial loan modification by failing to provide her with an explanation for ending the trial modification or, alternatively, by failing to offer her a loan modification. SAC ¶ 131-135. Plaintiff alleges she complied with all the terms and conditions of the three month trial modification, made the monthly payments for all three months, and continued paying the monthly payment under the modification for an additional three months. *Id.* ¶ 132. After six months, BANA informed Plaintiff that the trial period had ended and her mortgage payment would return to its original level. *Id.* ¶ 133. Plaintiff alleges she was given no explanation or reason for the denial of a permanent loan modification. *Id.* Plaintiff further alleges BANA representatives promised and reassured her that they would not proceed with foreclosure while they reviewed any loan modification application pursuant to HAMP or any other workout option. *Id.* ¶ 135.

The Court dismissed Plaintiff's prior breach of contract claim based on these same facts, finding that to the extent Plaintiff's claim was based on an alleged violation of HAMP or failure to offer her a loan modification, her claim failed because there is no private right of action under HAMP. *See Cleveland v. Aurora Loan Serv., LLC,* slip copy, 2011 WL 2020565 at *4 (N.D.Cal. May 24, 2011).

> As many of the courts have recognized, it would be unreasonable for a qualified borrower seeking a loan modification to rely on the HAMP servicer's agreement as granting him enforceable rights since the agreement does not actually require that the servicer modify all eligible loans, nor does any of the other language of the contract demonstrate that the borrowers are intended beneficiaries.

*Hoffman v. Bank of America, N.A.*, No. 10-2171, 2010 WL 2635773 at *3-4 (N.D.Cal., June 30, 2010). The Court further found that inasmuch as Plaintiff's claim was based on Defendants' failure to extend her trial modification to a permanent modification, the claim also failed. Again,

13

Plaintiff has not attached a copy of the trial loan modification, and there are no facts alleged in the SAC tending to suggest that the terms of the trial modification agreement required Defendants to grant a permanent modification, or to provide an explanation for denying a permanent loan modification. The Court will therefore dismiss Plaintiff's claim for breach of contract (Fourth Cause of Action) without leave to amend.

     5.    *Breach of Implied Covenant of Good Faith and Fair Dealing*

Plaintiff's Fifth Cause of Action alleges Defendants breached the implied covenant of good faith and fair dealing owed to Plaintiff because they repeatedly denied her requests to grant her a permanent loan modification. SAC ¶ 152. Plaintiff acknowledges that BANA was under no obligation to modify Plaintiff's loan, but argues BANA disingenuously approached the loan modification process, initially entertaining, but proceeding to wilfully ignore Plaintiff's attempts for a loan modification, unreasonably delaying the modification process, and failing to inform Plaintiff of the results of her modification applications. SAC ¶ 150. Plaintiff contends Defendants' willful actions prevented her from fulfilling her obligations under the loan contract. SAC ¶ 156.

Under California law, "[e]very contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract." *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal. App. 4th 873, 885 (Cal. App. 2011). Nevertheless, California courts have held that the covenant cannot impose substantive duties beyond those explicitly incorporated in the contract. *See Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349-50 (Cal. 2000). The SAC does not suggest that Defendants had a contractual duty[9] to provide Plaintiff with a loan modification, and California law does not impose such a duty upon lenders. *See Hamilton v. Greenwich Investors*, 195 Cal. App. 4th 1602, 1617 (Cal. App. 2011); *Pazargad v. Wells Fargo Bank*, 2011

---

[9] It is unclear from the SAC whether the "contract" on which Plaintiff relies is the trial modification agreement or the original loan agreement. However, there are no allegations regarding the terms of either agreement that would support such a duty.

14

WL 3737234, at *3 (C.D. Cal. Aug. 23, 2011). Thus, Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing based on allegations that Defendants did not properly entertain her attempts to modify her loan. Accordingly, the Court will dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Fifth Cause of Action) without leave to amend.

### 6. *Declaratory Relief*

Plaintiff's Eleventh Cause of Action asserts a claim for declaratory relief. Specifically, Plaintiff alleges Defendants wrongfully initiated a foreclosure proceeding against Plaintiff's home, and therefore Plaintiff will sustain irreparable injury through the permanent loss of her home. SAC ¶¶ 239-241. California courts have rejected a claim for declaratory relief where the claim was "nothing more than the repeat of the legal theory" asserted in the wrongful foreclosure claim. *See Gomes v. Countrywide Home Loans*, 192 Cal. App. 4th 1149, 1154-44 (Cal. App. 2011); *accord Robinson v. Countrywide*, 199 Cal. App. 4th 42, 46 (Cal. App. 2011). In essence, Plaintiff's claim for declaratory relief simply repackages her claims for wrongful foreclosure. Accordingly, the Court will dismiss Plaintiff's claim for declaratory relief (Eleventh Cause of Action) without leave to amend.

### 7. *Quiet Title*

Plaintiff's final cause of action seeks to quiet title against the claims of BANA and anyone else claiming an interest in the subject property.[10] SAC ¶ 177. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 639, 28 P.2d 673 (Cal. 1934); *see also Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (Cal. App. 1994). As the Court noted in its prior order, exceptions to the tender rule do not apply in an action to quiet title. "Quiet title is an equitable claim, a

---

[10] The Court notes the street address of the subject property listed in this cause of action, as well as in Plaintiff's Opposition brief is 643 Brook Street, Lafayette, CA 94549. SAC ¶ 244; Court's Docket, Doc. No. 24 at 22. This appears to be a typographical error, as the address listed on the DOT and elsewhere in the SAC is 2202 E. Hogan Avenue, Fresno, CA, 93720. *See* RJN, Ex. A; SAC ¶ 26.

15

plaintiff in equity must do equity in order to obtain relief. This means repaying the money borrowed before voiding the security for the loan." *Chavez v. Bank of America*, 2010 WL 1854087, at *14 (E.D. Cal. May 6, 2010). To prevail on a quiet title claim, a plaintiff must show that he has title superior to that of the defendant. *See Gerhard v. Stephens*, 68 Cal.2d 864, 918 (Cal. App. 1968). Plaintiff has not alleged that she has paid or is ready and willing to pay the outstanding mortgage debt. Plaintiff has already been given the opportunity to amend to allege tender, and therefore the Court will dismiss Plaintiff's claim for quiet title (Twelfth Cause of Action) without leave to amend.

**B.     Motion to Strike**

Defendants have also moved to strike Plaintiff's requests for punitive damages and attorney's fees. *See* SAC ¶¶ 126, 128, 129, 158, 159, 168, 169. Because the Court will grant Defendants' motion to dismiss the SAC, it need not address the motion to strike.

**CONCLUSION AND ORDER**

Accordingly, it is HEREBY ORDERED that:

1.     Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 21) is GRANTED;

2.     Plaintiff's claims are dismissed without leave to amend;

3.     Defendants' Motion to Strike (Doc. No. 20) is DENIED as moot;

4.     The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   January 28, 2013

_____
SENIOR DISTRICT JUDGE